**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------ X

PAUL IACOVACCI,               :
                              :
            <u>Plaintiff</u>,     :
                              :
    -against-                 :
                              :
DOUGLAS MONTICCIOLO, as a     :
member and the majority owner :
of Brevet Holdings, LLC, Chief :
Investment Officer of Brevet  :
Capital Management, LLC, a    :
member of Brevet Short        :
Duration Partners, LLC, a     :
member of Brevet Short        :
Duration Holdings, LLC, and   :
individually; MARK CALLAHAN,  :   No. 18 Civ. 7984 (JFK)
as President of Brevet Capital :   **OPINION & ORDER**
Management, LLC, a member of  :
Brevet Short Duration         :
Partners, LLC, a member of    :
Brevet Short Duration         :
Holdings, LLC, and            :
individually; JOHNNY LAN, as  :
head of technology and vice-  :
president of Brevet Capital   :
Management, LLC, and          :
individually; and JOHN DOES   :
and JANE DOES 1 through 10;   :
and all known corporate and   :
other entities,               :
                              :
            <u>Defendants</u>.    :

------------------------------ X

<u>APPEARANCES</u>

FOR PLAINTIFF PAUL IACOVACCI
      David Ross Ehrlich
      Debra L. Wabnik
      STAGG, TERENZI, CONFUSIONE & WABNIK, L.L.P.

FOR DEFENDANTS DOUGLAS MONTICCIOLO & MARK CALLAHAN
      Christine Isabelle Laurent
      Joseph Kim
      Philip Semprevivo

BIEDERMANN HOENIG SEMPREVIVO, P.C.

FOR DEFENDANT JOHNNY LAN
    Daniel Seth Weinberger
    Edward William Larkin
    GIBBONS P.C.

**JOHN F. KEENAN, United States District Judge:**

Before the Court is a motion by Defendants Douglas Monticciolo ("Monticciolo") and Mark Callahan ("Callahan") to dismiss the complaint filed by Plaintiff Paul Iacovacci ("Iacovacci") pursuant to Federal Rule of Civil Procedure 12(b)(1).  Defendant Johnny Lan ("Lan," and together with Monticciolo and Callahan, "Defendants") joins the motion.  For the reasons set forth below, the Court grants Defendants' motion to dismiss.

## I.   BACKGROUND

### A. Factual Background

The Court takes the following relevant facts from the allegations in the amended complaint and, for the purposes of this motion, assumes they are true.

Iacovacci is a citizen of, and domiciled in, Connecticut. (Compl. ¶ 5.)  Monticciolo and Lan are citizens of, and domiciled in, New York. (Id. ¶ 6, 8.)  Callahan is a citizen of, and domiciled in, New Jersey. (Id. ¶ 7.)  Iacovacci asserts that this Court has diversity jurisdiction over his claims pursuant to 28 U.S.C. § 1332(a)(2). (Id. ¶ 3.)

Beginning in 2004, Iacovacci served as Managing Director of Brevet Capital Management, LLC ("BCM"), an investment advisor, where he received a monthly salary of $10,000. (Id. ¶¶ 9, 11.) BCM's sole member and owner is Brevet Holdings, LLC ("BH"). (Id. ¶ 10.) Monticciolo was a member of BH, and the Chief Investment Officer of BCM. (Id. ¶ 13.) He had control over and responsibility for BCM and BH's daily operations. (Id. ¶ 14.) Callahan was the President of BCM, and, together with Monticciolo, oversaw BCM and BH's daily operations. (Id. ¶ 15.) Lan was Vice President and Head of Technology at BCM. (Id. ¶ 17.)

In 2009, Iacovacci, together with Monticciolo and Callahan, founded Brevet Short Duration Partners, LLC ("Partners") and Brevet Short Duration Holdings, LLC ("Holdings," and together with Partners, the "Short Duration Companies"). (Id. ¶ 11.) The Short Duration Companies were Delaware limited liability companies engaged in the short duration lending business. (Id. ¶ 18.) Iacovacci was the "head of sourcing" and was in charge of "finding borrowers to lend funds . . . to the Short Duration Companies." (Id. ¶ 27.)

On or about January 21, 2009, Iacovacci, Monticciolo, and Callahan entered into and executed nearly identical LLC agreements for Holdings and Partners (the "LLC Agreements"). (Id. ¶ 19.) Pursuant to the LLC Agreements, the parties agreed

that each member would maintain a capital account, that net profits and net losses would be allocated on a pro rata basis, and that members could withdraw and retire from the Short Duration Companies at any time as long as he or she gave 180 days' notice. (Id. ¶¶ 20-23.)  Upon withdrawal, a member was entitled to "a share of the net profits in the termination year and the member's capital account balance." (Id. ¶ 24.)  In addition, a founding member of Partners who elected to withdraw was entitled to receive payments of net profits in declining amounts for an additional five years after withdrawal. (Id. ¶ 25.)  A founding member of Holdings was entitled to declining amounts of profits for an additional ten years. (Id. ¶ 26.)

Iacovacci underwent surgery on his knee on December 18, 2015. (Id. ¶ 28.)  Given the surgery and the length of recovery, Iacovacci, on January 6, 2016, convened a meeting with Monticciolo and Callahan and informed them that he intended to withdraw from the Short Duration Companies and retire from Brevet. (Id. ¶ 29.)  He confirmed this in an email dated January 12, 2016, making this his effective retirement date. (Id. ¶ 30.)

After Iacovacci announced his retirement decision, Monticciolo and Callahan allegedly engaged in a concerted and fraudulent scheme to deprive Iacovacci of the payments to which he was entitled under the LLC Agreements and of future opportunities to work in the hedge fund and lending industries.

4

(Id. ¶ 31.)  The Court will summarize the acts they allegedly committed as part of this scheme.

First, between January and October 2016, Monticciolo and Callahan secretly and without Iacovacci's consent gained access to LogMeIn, a remote access software that Iacovacci and had installed on his personal home computer. (Id. ¶ 32.)  They also made at least two dozen attempts to access two external hard drives he owned. (Id.)  Iacovacci had authorized Lan to access the hard drives on specific and isolated occasions, but he had not authorized the two dozen attempts that had been made between January and October 2016, and which Iacovacci only discovered after a forensic expert analyzed his computer and hard drives. (Id.)

Second, Monticciolo and Callahan delayed negotiating a withdrawal agreement with Iacovacci. (Id. ¶ 33.)  When they finally provided him with a draft agreement, it contained a non-compete provision in violation of the LLC Agreements. (Id. ¶ 35.)

Third, Monticciolo and Callahan further invaded Iacovacci's computer and hard drives, even accessing his Yahoo! Email account, which contained privileged communications with his attorney. (Id. ¶ 37.)  On April 19, 2016, they installed the file deletion software File Shredder on Iacovacci's computer and

deleted numerous files, including Iacovacci's personal financial information. (Id.)

Fourth, on October 14, 2016, Monticciolo and Callahan terminated Iacovacci's employment at BCM and BH and unlawfully took possession of all of Iacovacci's interests in the Short Duration Companies. (Id. ¶ 39.) By removing Iacovacci for cause, Monticciolo and Callahan subjected Iacovacci to additional restrictions, like a 24 month non-compete provision, which he would have avoided as a retiring member of the Short Duration Companies. (Id. ¶ 42.)

Finally, Monticciolo and Callahan again hacked Iacovacci's computer after he filed an action, on October 17, 2016, against BH and the Short Duration Companies in Supreme Court, New York County for breach of contract, unjust enrichment, and conversion. (Id. ¶ 43.) Monticciolo and Callahan accessed a "Family" account on Iacovacci's computer, Iacovacci's personal emails, and Iacovacci's external hard drives, and they secretly copied and downloaded large quantities of documents. (Id. ¶¶ 44-47.)

Based on the aforementioned actions, Iacovacci commenced this federal action (the "Federal Action") asserting claims against Defendants for fraud, civil conspiracy to defraud, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, conversion, and constructive trust. He brings a

claim against Lan for aiding and abetting breach of fiduciary
duty and breach of duty of loyalty, and a claim against
Monticciolo and Callahan for breach of contract and implied
covenant of good faith and fair dealing.  Finally, Iacovacci
requests a declaratory judgment holding that Monticciolo and
Callahan wrongfully terminated Iacovacci's interests in the
Short Duration Companies, and an accounting against them.

## B. Procedural History

On October 17, 2016, nearly two years before filing this
federal action, Iacovacci brought an action in New York State
Supreme Court, County of New York against BH and the Short
Duration Companies (the "State Action"), which is currently
pending before Judge David Cohen. (Semprevivo Decl., Ex. C, ECF
No. 32 [hereinafter "Original State Action Compl."].)
Iacovaccci requested a declaratory judgment, pursuant to N.Y.
C.P.L.R. § 3001, that certain non-compete provisions were
unenforceable and asserted claims against the Short Duration
Companies for breach of the LLC Agreements, anticipatory breach
of the LLC Agreements, breach of the implied covenant of good
faith and fair dealing, unjust enrichment, and conversion. (Id.
¶¶ 37-49, 50-89).  He also requested the imposition of a
constructive trust. (Id. ¶¶ 89-95.)

On August 24, 2018, Iacovacci filed an unopposed motion for
leave to amend his complaint in state court. (Semprevivo Decl.,

Ex. D.)  The amended complaint adds Brevet Capital Partners, LLC and Brevet Capital Holdings, LLC as defendants, and adds a claim for fraud. (Id. ¶¶ 104-117.) (Semprevivo Decl., Ex. E ¶¶ 79-131, 104-117 [hereinafter "State Action Compl."].)

To date, the parties in the state action have engaged in motion practice and discovery.  Defendants represent that the parties have conducted several depositions (including ones in Nevada and Georgia), issued numerous non-party document subpoenas, and briefed twelve different motions. (Mem. of Law in Supp. of Defs.' Mot. to Dismiss at 1, ECF No. 33 [hereinafter "Mem."].)  In addition, the state court has ordered that Iacovacci's computer be turned over to a neutral forensic expert for analysis. (Semprevivo Decl., Ex. I.)

On August 31, 2018, one week after amending his complaint in state court, Iacovacci filed this action in federal court. On November 12, 2018, Defendants filed the instant motion to dismiss pursuant to Rule 12(b)(1), arguing that Iacovacci's state and federal court actions are parallel and, therefore, the Court should abstain from exercising jurisdiction.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(1), an action must be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case. Fed. R. Civ. P. 12(b)(1).  In

adjudicating a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a court may consider matters outside the pleadings. United States v. Blake, 942 F. Supp. 2d 285, 292 (E.D.N.Y. 2013); see also Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).  On a 12(b)(1) motion, the Court accepts all material factual allegations in the complaint as true but does not necessarily draw inferences from the complaint favorable to the plaintiff. J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004) (citing Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998)).

### III. DISCUSSION

#### A. Colorado River Abstention

Defendants argue that this Court should abstain, pursuant to the doctrine established in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), from exercising jurisdiction over the claims in this federal action. (Mem. at 1.)  "A motion to dismiss based on Colorado River is considered as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of Federal Rules of Civil Procedure." Stahl York Ave. Co., LLC v. City of New York, No. 14 CIV. 7665 ER, 2015 WL 2445071, at *7 (S.D.N.Y. May 21, 2015), aff'd, 641 F. App'x 68 (2d Cir. 2016).

The Supreme Court in <u>Colorado River</u>, held that "in
situations involving the contemporaneous exercise of concurrent
jurisdiction," a federal court, in certain "exceptional"
circumstances, may abstain from exercising jurisdiction when
parallel state-court litigation could result in "comprehensive
disposition of litigation" and abstention would conserve
judicial resources. 424 U.S. at 813, 817-18.  In deciding
whether to abstain pursuant to <u>Colorado River</u>, courts consider
six factors:

> (1) whether the controversy involves a res over which one
> of the courts has assumed jurisdiction; (2) whether the
> federal forum is less inconvenient than the other for the
> parties; (3) whether staying or dismissing the federal
> action will avoid piecemeal litigation; (4) the order in
> which the actions were filed, and whether proceedings have
> advanced more in one forum than in the other; (5) whether
> federal law provides the rule of decision; and (6) whether
> the state procedures are adequate to protect the
> plaintiff's federal rights.

<u>Niagara Mohawk Power Corp. v. Hudson River-Black River
Regulating Dist.</u>, 673 F.3d 84, 100, 100-01 (2d Cir. 2012)
(quoting <u>Woodford v. Cmty. Action Agency of Greene Cty., Inc.</u>,
239 F.3d 517, 522 (2d Cir. 2001)).  "As an additional factor,
the Supreme Court has 'found considerable merit in the idea that
the vexatious or reactive nature of either the federal or the
state litigation may influence the decision whether to defer to
a parallel state litigation under <u>Colorado River</u>.'" <u>Abe v. New
York Univ.</u>, No. 14-CV-9323 (RJS), 2016 WL 1275661, at *5-6

(S.D.N.Y. Mar. 30, 2016) (quoting <u>Telesco v. Telesco Fuel &</u>
<u>Masons' Materials, Inc.</u>, 765 F.2d 356, 363 (2d Cir. 1985)).

No one <u>Colorado River</u> factor is decisive; instead, a court
must engage in a "carefully considered judgment[,] taking into
account both the obligation to exercise jurisdiction and the
combination of factors counselling against that exercise."
<u>Colorado River</u>, 424 U.S. at 818 (citation omitted); <u>see also</u>
<u>Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.</u>, 460 U.S. 1,
16 (1983) (explaining that the "weight to be given to any one
factor may vary greatly from case to case, depending on the
particular setting of the case").  The facial neutrality of a
factor "is a basis for retaining jurisdiction, not for yielding
it." <u>Woodford</u>, 239 F.3d at 522.

### 1. The State and Federal Actions Are Parallel

Before applying the <u>Colorado River</u> six-factor analysis, a
court must make the threshold determination "that the concurrent
proceedings are 'parallel.'" <u>Dittmer v. Cty of Suffolk</u>, 146 F.3d
113, 118 (2d Cir. 1998).  Federal and state proceedings are
parallel if "'substantially the same parties are
contemporaneously litigating substantially the same issue' in
both forums." <u>First Keystone Consultants Inc. v. Schelsinger</u>
<u>Elec. Contractors</u>, 862 F. Supp. 2d 170, 182 (E.D.N.Y. 2012)
(quoting <u>Dittmer</u>, 146 F.3d at 118); <u>see also</u> <u>GBA Contracting</u>
<u>Corp. v. Fid. & Deposit Co. of Md.</u>, No. 00 CIV. 1333 SHS, 2001

WL 11060, at *1 (S.D.N.Y. Jan. 4, 2001) (holding that
parallelism does not require an exact identity of the parties;
rather, "the parallel litigation requirement is satisfied when
the main issue in the case is the subject of already pending
litigation.").

For the following reasons, the Court finds that the state
action and this federal action are parallel. First, the same
factual allegations -- in sum, the firing of Iacovacci for
cause, the denial of his right to seek profits owed to him under
the LLC Agreements, and the allegedly fraudulent activities of
Monticciolo and Callahan -- underlie the two complaints. See
Cong. Talcott Corp. v. Roslin, No. 95 CIV. 7698LAP, 1996 WL
499337, at *3 (S.D.N.Y. Sept. 4, 1996) (finding two actions
parallel where "the exact same events underlie both actions").
Second, because of the overlapping factual allegations
"[p]resumably, resolution of each matter will be decided on the
basis of the same discovery, the same documents, the same
depositions, and the same witnesses." Id. Finally, both
complaints seek the same relief: an award of compensatory
damages not less than $115 million. (Compare Compl. at 23 with
State Action Compl. at 27.) See also Telesco, 765 F.2d at 359
(affirming the district court's decision to abstain from
exercising jurisdiction over a concurrent federal action because

12

the plaintiff "essentially made the same claims and sought the same relief in both the state and federal courts.")

Iacovacci argues that the two actions are not parallel for several reasons, the first of which is that the parties in the two lawsuits are not the same. (Pl.'s Mem. of Law in Opp. at 3, ECF No. 38 [hereinafter "Opp."].)  The Court does not find this argument dispositive.  In Congress Talcott, the district court found concurrent actions parallel where none of the defendants in the actions were the same. No. 85 Civ. 7698LAP, 1996 WL 499337 at *3 (S.D.N.Y. Sept. 4, 1996).  There, the plaintiff sued an individual defendant in federal court, and another individual and two corporate entities in state court. Id.  The district court found that "the same events" underlay both actions, and the defendants in the state and federal actions were "closely related" because the individual defendants were principals of one entity defendant, and the federal defendant was the president, secretary, and sole shareholder of the other entity defendant. Id.

As in Congress Talcott, Defendants in this action are "closely related" to the defendants in the state action; Callahan and Monticciolo are the founding members of the corporate entities named in the state action and are the individuals through which those corporate entities are alleged to have acted. (See State Action Compl. ¶¶ 38-39, 41, 53, 58

13

(describing acts committed by Monticciolo and Callahan).)
Moreover, the facts alleged against Defendants in this action
and BH, the Short Duration Companies, Brevet Capital Holdings,
LLC and Brevet Capital Partners, LLC in the state court action
are virtually identical.  The defendants in both actions will
have to argue that Iacovacci was properly terminated for cause
and, therefore, not entitled to any profits under the LLC
Agreements, and that Monticciolo and Callahan did not engage in
fraudulent activities.  Thus, because "the main issue[s] in the
case [are] the subject of already pending litigation," a perfect
match between the parties is not required. GBA Contracting
Corp., 2001 WL 11060, at *1.

        Nor is the Court persuaded that this action and the state
action are not parallel because this action includes Lan as a
defendant, whereas the state action does not.  Iacovacci's
allegations regarding Lan are minimal.  In fact, he is mentioned
in eleven paragraphs out of an 124-paragraph complaint and named
in only two claims. (See Compl. ¶¶ 8, 16, 32, 52-56, 87-89.)
The presence of Lan is therefore insufficient to change the fact
that the issues being litigated and facts to be proved in the
two forums are still "substantially the same." Dittmer, 146 F.3d
at 118; see also Pabco Const. Corp. v. Allegheny Millwork PBT,
No. 12 CIV. 7713, 2013 WL 1499402, at *2 (S.D.N.Y. Apr. 10,
2013) (holding that even though the parties in the concurrent

state and federal cases were not "strictly identical," and the federal action named a defendant not named in the state action, parallelism still existed because "complete identity of parties is not required" (quoting GBA Contracting, 2001 WL 11060, at *1)).

Iacovacci further argues that there is no parallelism between the state and federal actions because he asserts four claims in the federal action that he does not assert in state court -- civil conspiracy to defraud, breach of fiduciary duty, breach of duty of loyalty, and aiding and abetting a breach of fiduciary duty and duty of loyalty. (Opp. at 3.)  Generally, "resolution of the state action must 'dispose of all claims presented in the federal case.'" DDR Const. Servs., Inc. v. Siemens Indus., Inc., 770 F. Supp. 2d 627, 644 (S.D.N.Y. 2011) (quoting Stone v. Patchett, No. 08 Civ. 5171, 2009 WL 1108596, at *14 (S.D.N.Y. Apr. 23, 2009))).  Iacovacci's new claims, however, are a mere attempt "to cast the same grievances in the form of . . . new legal theor[ies]," which is insufficient to distinguish the two actions under the Colorado River doctrine. See Telesco, 765 F.2d at 359, 362 (holding proceedings parallel because "in its essential elements the same cause of action, regardless of theory or pleadings, is asserted in both counts.").  Supporting this conclusion is, first, the fact that Iacovacci's breach of fiduciary claim consists of the same

factual allegations as his claims for breach of contract and
breach of the implied covenant of good faith and fair dealing in
state court. (Compare Compl. ¶ 72 ("Defendants design[ed] and
further[ed] an unlawful scheme to deprive Iacovacci of his
rightful ownership interest in the Short Duration Companies,
including but not limited to intentionally refusing to accept
Iacovacci's withdrawal and retirement . . . .") with State
Action Compl. ¶ 83 ("The reasons proffered by Defendants for
Plaintiff's discharge and removal were false and a pretext, and
part of Defendants' illegal scheme to deprive Plaintiff of the
payments due to him under the LLC Agreements based on his
voluntary withdrawal.").)  Second, as mentioned above,
Iacovacci's new claims in federal court "request[] the same
relief" as his claims in the state action:  $115 million in
damages. Telesco, 765 F.2d at 359.  Accordingly, the four
additional causes of action are attempts to recast the causes of
action that Iacovacci asserts in state court and thereby do not
bar a finding that the two actions are parallel.

    Finally, Iacovacci argues that the federal and state
actions are not parallel because, despite seeking the same
amount of damages in the two actions, he seeks a constructive
trust against Monticiollo and Callahan in the federal action,
which he does not seek in the state action. (Opp. at 4.)  As
noted, the main form of relief that Iacovacci seeks is the same

in both actions -- damages in the amount of $115 million.
However, "even if different relief [were] sought in the two
actions, or the claims [were] not exactly the same, they are
parallel as long as the causes of action are comprised of the
same essential issues." Garcia v. Tamir, No. 99 CIV. 0298 (LAP),
1999 WL 587902, at *3 (S.D.N.Y. Aug. 4, 1999).  As the Court has
repeatedly stated, the causes of action in both the state and
federal actions are comprised of the same essential issues:
whether Iacovacci was wrongfully terminated for cause, whether
he was wrongfully denied profits owed him under the LLC
Agreements, and whether Monticciolo and Callahan, as
representatives of various corporate entities, committed fraud
against Iacovacci.  Therefore, that part of the relief requested
in the federal action differs from the relief requested in the
state action does not destroy the duplicative nature of the two
actions.

### 2.  The Colorado River Factors Weigh in Favor of Dismissal

The federal and state actions being parallel, the Court
will now weigh the six Colorado River factors.

### (a)  Whether the Federal Court Has Assumed Jurisdiction Over a Res

There is no property over which the state court has
exercised exclusive jurisdiction -- i.e., this is not an
action in rem. See Niagara Mohawk, 673 F.3d at 101 ("First, we
consider whether the federal or state court has obtained

jurisdiction over a res. . . .  This is not an in rem action,
and neither the federal district court nor the New York state
courts have assumed jurisdiction over any res or property.")
Defendants attempt to argue that the state court has
jurisdiction over Iacovacci's computer and hard drives because
it has ruled that those devices must be turned over to a neutral
forensic expert for discovery purposes. (Opp. at 12.)  This
argument is unavailing because it misconstrues Colorado River's
first factor, which relates to whether a state court has decided
to exercise its jurisdiction in determining rights to property.
See Colorado River, 424 U.S. at 805 (involving a dispute over
"rights to the use of water"); see also United States v. Blake,
942 F. Supp. 2d 285, 298 (E.D.N.Y. 2013) ("First, the dispute
between the parties involves a res over which the state court
had already assumed jurisdiction in the Quiet Title Action
before the Plaintiff even commenced the instant action.").
Here, the state court has simply made discovery rulings; it is
not determining property rights with regard to Iacovacci's
technological devices.  The first factor, therefore, does not
apply and, accordingly, is neutral and weighs against
abstention. See Woodford, 239 F.3d 517 at 522.

    **(b)  Relative Convenience of the Federal Forum**

    This courthouse and New York Supreme Court are next door to
each other.  There is no inconvenience to any party in having to

litigate here. "When, as here, dismissing the case would not
result in a substantial net gain in convenience, this factor
does not favor dismissal." King v. Hahn, 885 F. Supp. 95, 98
(S.D.N.Y. 1995).

   **(c)  Avoidance of Piecemeal Litigation**

   This factor weighs in favor of abstention. Here, as the
federal and state actions are based on the same underlying
facts, there is a risk of duplicative litigation and
inconsistent results, especially if there are findings in either
state or federal court regarding (1) the interpretation of the
LLC Agreements, (2) whether Iacovacci was improperly terminated
for cause, and (3) whether Iacovacci and Monticciolo, either
acting as themselves or as employees of Brevet and founding
members of the Short Duration Companies, engaged in fraud. The
Court, however, is cognizant that "[i]n all cases where parallel
actions overlap, this factor will favor abstention," and
"[t]hus, reliance on this factor alone would undermine the
notion that the Colorado River doctrine is limited to
'exceptional circumstances.'" Nat'l Union Fire Ins. Co. of
Pittsburgh, Pa. v. Thomas, 713 F. Supp. 62, 66 (S.D.N.Y. 1988);
see also Fernandez v. City of New York, No. 17-CV-2431
(GHW)(SN), 2017 WL 2894144, at *3 (S.D.N.Y. July 7, 2017)
("[B]ecause 'any case involving parallel proceedings presents a
risk of duplicative litigation or a rush to judgment, the

existence of those risks can weigh only modestly in favor of dismissal; otherwise dismissals pursuant to <u>Colorado River</u> would be the rule, not the exception, in cases involving parallel proceedings in state and federal court.'" (quoting <u>Dalzell Mgmt. v. Bardonia Plaza, LLC</u>, 923 F. Supp. 2d 590, 60 (S.D.N.Y. 2013))). Accordingly, this factor weighs "only modestly" in favor of dismissal. <u>King</u>, 885 F. Supp. at 98.

      **(d)  Relative Advancement of Proceedings in Each Forum**

    Iacovacci sued the state court defendants nearly two years prior to commencing this federal action. (<u>See</u> Original State Action Compl.) "The Supreme Court has made clear that 'priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made on the two actions.'" <u>Millennium Drilling Co. v. Prochaska</u>, No. 14CV1985, 2014 WL 6491531, at *5 (S.D.N.Y. Nov. 18, 2014) (quoting <u>Moses H. Cone</u>, 460 U.S. at 21). Discovery in state court has been ongoing, and Judge Cohen has been actively working to resolve several discovery disputes, including issuing an order mandating Iacovacci's computer and external hard drives be delivered to an expert for analysis. (Ehrlich Decl. ¶ 4, ECF No. 37; Semprevivo Decl., Exs. I, K.) The parties have also engaged in document discovery and conducted numerous non-party depositions. (Ehrlich Decl. ¶ 6.) Iacovacci himself has stated that over "160,000 pages have been produced" in the state

action. (Semprevivo Decl., Ex. N at 4.)  By contrast, discovery
in this action has not yet commenced, and the parties are still
at the pleading stage.  Accordingly, this factor weighs in favor
of the Court abstaining from its exercise of jurisdiction over
this case. See Millennium Drilling Co., 2014 WL 6491531, at *5
("[I]n the Texas Action over 100,000 pages of documents have
exchanged hands and several depositions have taken place . . . .
Trial is set to begin in March 2015.  By contrast, this lawsuit
has not progressed beyond the pleading stage.  Given the
relative advancement of the Texas Action, this factor weighs in
favor of abstention."); see also Paul v. Raytex Fabrics, Inc.,
318 F. Supp. 2d 197, 198 (S.D.N.Y. 2004) (abstaining upon
finding that the parallel state court action, which had
commenced nine months earlier, had already proceeded into
discovery).

    **(e)  Whether Federal Law Provides Rules of Decision**

"When the applicable substantive law is federal, abstention
is disfavored." Niagara Mohawk, 673 F.3d at 102.  In addition,
"although the presence of federal issues strongly advises
exercising federal jurisdiction, the absence of federal issues
does not strongly advise dismissal, unless the state law issues
are novel or particularly complex." Vill. of Westfield v.
Welch's, 170 F.3d 116, 124 (2d Cir. 1999).

Iacovacci argues that his conspiracy to defraud claim would be governed by federal law, and, therefore, this Court should not abstain from exercising its jurisdiction. (Opp. at 19.) Regardless of whether federal common law would apply to Iacovacci's conspiracy claim (and the Court doubts that it does), at a minimum, ten out of Iacovacci's eleven claims are governed by state law.  Accordingly, this factor favors dismissal, although it does not do so "strongly." Vill. of Westfield, 170 F.3d at 124.

### (f)  Whether State Procedures Are Adequate to Protect Plaintiff's Federal Rights

"In assessing the adequacy of the state court forum, the court must determine whether the 'parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.'" Millennium Drilling Co., 2014 WL 6491531, at *5 (quoting Moses H. Cone, 460 U.S. at 28.).  Iacovacci has not explained why the New York state court is not able to resolve the predominantly state law issues he asserts.  He argues that "defendants have made every effort to delay the litigation [in state court] by creating ludicrous issues and taking nonsensical positions on simple matters." (Opp. at 20.)  There is no reason to believe, however, that Defendants will not engage in the same behavior in federal court, thereby causing this action to proceed at the same pace as the state action.  Accordingly, this factor is

neutral. Stahl York Ave. Co., LLC, 2015 WL 2445071, at *12
("[T]he ability of the state court to adequately
protect Stahl's interests only makes this factor neutral.").

### (g) Analysis of the Factors

Three of the six factors weigh in favor of abstention.  The
Court is aware that "[t]he abstention doctrine comprises a few
extraordinary and narrow exceptions to a federal court's duty to
exercise its jurisdiction" and that, as a result, "the balance
is heavily weighted in favor of the exercise of jurisdiction."
Woodford, 239 F.3d at 522.  The Court holds, however, that this
case meets the narrow exception that permits the Court to
abstain from exercising its jurisdiction.

To recap, the state and federal actions are parallel, the
law to be decided is predominately state law, and the state
action has been proceeding in front of Judge Cohen for almost
two years.  Notably, although Judge Cohen has not yet ruled on
the merits of either Iacovacci's claims or the state action
defendants' counterclaims, he has grappled with difficult
discovery issues relating to Iacovacci's computer and hard
drives and has ruled that Iacovacci's technological devices be
turned over to a neutral expert. (Semprevivo Decl., Ex. I.)  By
contrast, discovery has not yet commenced in this case.  In
addition, it would appear that when confronted with unfavorable
rulings related to discovery, Iacovacci attempted to turn to

this Court to litigate his claims.  This would hint that Iacovacci "was merely seeking to pit the state and federal judicial systems against each other, and hoping for a better outcome in the latter." <u>Abe</u>, 2016 WL 1275661, at *10.  These facts all tip the balance in favor of abstention.  Accordingly, Defendants' 12(b)(1) motion is granted.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED.  The Clerk of Court is respectfully directed to terminate the motions pending at docket entries 31 and 34 and close this case.

**SO ORDERED.**

Dated:     New York, New York
           May  9   , 2019

                                   John F. Keenan
                           United States District Judge